1   CRAIG P. FAGAN, Esq. [State Bar No. 149556]
    **LAW OFFICES OF CRAIG P. FAGAN**
2   6320 Raydel Court
    San Diego, CA 92120
3   Telephone: (619) 528-9600
    Facsimile:  (619) 528-9675
4   E-mail: cpfagan@faganlegal.com

5   Attorneys for all Plaintiffs

6

7

8                   **UNITED STATES DISTRICT COURT**

9                **SOUTHERN DISTRICT OF CALIFORNIA**

10  BARBARA LAWRENCE, an Individual,  )   No. 3:14cv01753-DMS-DHB
    TYNEIL ALLARD, an Individual, T.F., a )
11  minor by and through his guardian ad litem, )   **JOINT MOTION FOR**
    JAMES YARBOROUGH, T.F., a minor by )   **DETERMINATION OF**
12  and through his guardian ad litem, JAMES )   **DISCOVERY DISPUTE;**
    YARBOROUGH, N.Y., a minor by and )   **DECLARATION OF CRAIG P.**
13  through her guardian ad litem, JAMES )   **FAGAN**
    YARBOROUGH, E.Y., a minor by and )   _____
14  through her guardian ad litem, JAMES )
    YARBOROUGH, )
15            )   Judge:       Hon. David H. Bartick
          Plaintiffs,   )   Ctroom:     Suite 1080
16            )   Discovery
       v.   )   Cutoff Date: August 14, 2015
17            )   PTC:        December 18, 2015
    HOBAN MANAGEMENT, INC. a )   Trial:       January 18, 2016
18  California Corporation, )
    MIKE SPORER, TRUSTEE OF THE RAY )   _____
19  SPORER TRUST NUMBER ONE dated )
    January 9, 1990; MIKE SPORER doing )   This motion is made following the
20  business as TIARA GREENS )   in-person conference of counsel
    APARTMENTS, and DOES 1 THRU 10, )   pursuant to L.R. 26.1,which took place
21  INCLUSIVE, )   on February 12, 2015
            )   _____
22          Defendants   )
            )
23  _____ )

24

25

26

27

28

_____
                    **JOINT MOTION RE: DISCOVERY**

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................................ i

I.      Plaintiff's Introductory Statement ............................................................... 1

II.     Defendants' Introductory Statement .......................................................... 1

III.    Discovery Requests in Dispute .................................................................... 2

      1.      Interrogatories to Hoban Management, Inc.

           Interrogatory No. 1 ..................................................................  4

           Interrogatory No. 2 ..................................................................  14

           Interrogatory No.  3 .................................................................  15

           Interrogatory No.  4 .................................................................  16

      2.      Requests for Production to Hoban Management, Inc.

           Request No. 6 ...........................................................................  16

# I.

## <u>PLAINTIFF'S INTRODUCTORY STATEMENT</u>

This is an action challenging familial status discrimination in the operation of the Tiara Greens Apartments in El Cajon, CA (hereinafter "the Subject Property") based on familial status in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§3601 *et seq.*, and related federal and state laws. In short, Defendants have enforced house rules which prohibited children from playing outside, a direct violation of state and federal fair housing laws.

This is the third time in ten years that Defendant Hoban Management, Inc., has been sued for housing discrimination.

Plaintiff Barbara Lawrence moved into the subject property in June 2012. Her young grandchildren and her adult daughter, Tyneil Allard, would come to visit. Almost immediately after moving in, Defendants began a campaign of harassment against her grand children, repeatedly refusing to allow them to play outside in the common areas of the complex. Plaintiffs have alleged that this conduct was virtually non-stop from June 2012 until the current case was filed in July 2014. Although Defendants would like to characterize this as a few isolated events, the pleadings and testimony thus far suggest quite the contrary. Defendant's history of discrimination continues unabated.

During discovery, Plaintiffs requested the contact information of tenants who have lived at the complex during the time period that Ms. Lawrence has been a tenant. Without question, these individuals can help determine whether Defendants' discriminatory practices continued during that time that Ms. Lawrence lived at the complex. Defendant refused to turn over all tenant contact information. After discussions, Defendant agreed to turn over the address of all current and former tenants, but refused to turn over their telephone numbers. Defendant believes that it is not required to turn over telephone contact information of such witnesses. Having been unable to resolve the dispute on this issue, this motion has followed.

Plaintiffs have complied with Local Rule 26-1 before filing the current motion, and have complied with Judge Bartick's in–person meet & confer of counsel prior to the current motion being filed [Decl. Craig P. Fagan ¶2].

## II.

## <u>DEFENDANTS' INTRODUCTORY STATEMENT</u>

Plaintiffs claim Defendants, who own and/or operate a 50 unit apartment complex in El Cajon known as "Tiara Greens", engaged in familial discrimination by prohibiting children from playing outside.

Plaintiff BARBARA LAWRENCE is a tenant who resides at Unit. No. 26 at Tiara Greens. Plaintiff BARBARA LAWRENCE's daughter is Plaintiff TYNEIL ALLARD. Plaintiff TYNEIL ALLARD's children (and hence Plaintiff BARBARA LAWRENCE's grandchildren), are minors, and are Plaintiffs T.F., T.F., N.Y, and E.Y.

Plaintiffs' allegations are that when Plaintiff BARBARA LAWRENCE's grandchildren (which are Plaintiffs T.F., T.F., N.Y, and E.Y.) came to visit Plaintiff BARBARA LAWRENCE at Tiara Greens, they were precluded from playing outside. [See Plaintiffs' First Amended Complaint, lodged herewith as Exhibit "1"]. It alleged that the onsite manager of Tiara Greens at the time, Kathy Virissimo, told Plaintiffs the minor children could not to play outside, and that they had to go inside. [See Plaintiffs' FAC, lodged herewith as Exhibit "1"]. <u>Specifically, it is alleged that from June of 2012 to October of 2014 (over a two year period), there were five separate occasions (June, July, and October of 2012, and March 1 and June 20 of 2014) when the onsite manager at the time, Kathy Virissimo, told Plaintiffs that the grandchildren could not play outside.</u> [See ¶¶ Nos. 17, 18, 20, 24, and 27 of Plaintiffs' FAC, Exhibit "1" lodged herewith]. It is also alleged that a written notice sent to tenants at Tiara Greens (Exhibit "1" to FAC) constituted familial discrimination by making a preference for those tenants who do not have children. [See ¶No. 26 Plaintiffs' FAC, Exhibit "1" lodged herewith].

Based upon the above referenced allegations, Plaintiffs are claiming that any person who was or is a tenant of Tiara Greens (which is a 50 unit complex), since 2012, is a potential witness. Again, Plaintiffs allege five specific instances when Kathy Virissimo told Plaintiffs they could not play outside. Rather than Plaintiffs identify which tenants likely witnessed the alleged conduct (which they would know, as they were there), Plaintiffs wish for Defendants to disclose anybody and everybody, who on a mere theoretical level, could have possibly witnessed the allegations they claim, by virtue of being a resident at Tiara Greens. Despite vehemently disagreeing with identifying tenants and providing tenants' addresses, who it is

believed are not "likely have discoverable information" (FRCP Rule 26(a)(1)(1)(A)(i)), Defendants begrudgingly provided the same after Plaintiffs met and conferred and pointed out the ruling in *Zuniga v. Western Apartments*, 2014 WL 2599919 (C.D. Cal. Mar. 25, 2014). Plaintiffs' meet and confer correspondence, relying and citing to the same, has been lodged herewith as Exhibit "2." It was hoped that by identifying past and current tenants, Defendants would avoid unnecessary motion practice.

Notwithstanding the above concession, Plaintiffs have moved forward with this subject Motion, requesting Defendants to identify the telephone numbers of all past and current tenants (since 2012). This is in direct contravention to *Zuniga,* the very case Plaintiffs relied upon in order to obtain the identification of past and current tenants in the first place. Not only does this subject Motion go directly against *Zuniga*, but as Plaintiffs point out, it also goes directly against *Sanders v. Edge Holdings* 2012 U.S. Dist. Lexis 27090 (S.D. Cal. March 1, 2012). *Sanders* ordered the disclosure of names and addresses at an apartment complex, but not telephone numbers. In addition, there was conditions limiting the nature of the contact.

In *Zuniga*, the plaintiffs made essentially the exact same allegations as are being made in this case. *Zuniga*, citing *A. Farber & Partners, Inc. v. Garber* 234 F.R.D. 186, 191 (C.D. Cal. 2006), acknowledged that federal courts recognize a constitutionally-based right of privacy that can be raised in response to discovery requests, and that courts need to balance the need for the information sought against the privacy right asserted. In conducting that balancing test, *Zuniga* ruled:

> "To the extent this Order directs defendants to produce information regarding third parties, plaintiffs/plaintiffs' counsel must adhere to the following conditions: Plaintiffs/plaintiffs' counsel may only contact such third parties in writing (mail/email) to inform the third parties that plaintiffs/plaintiffs' counsel wishes to talk to them about this lawsuit and provide contact information for plaintiffs/plaintiffs' counsel's investigator. The writing shall make clear that those contacted are under no obligation whatsoever to respond in any manner to the writing. In the event any such third party thereafter does respond and indicates that he/she is willing to communicate with plaintiffs' representative(s) in another fashion (e.g. telephonically), plaintiffs/plaintiffs' counsel's investigator may do so."

More recently, on September 10, 2014, the Honorable Robert N. Block in *Fabiola Villalvazo et al v. Borba Investment Realty, Inc. et al.*, 8:14-cv-000454-JLS-RNB, Document No. 27, in deciding the way in which current and past tenants at an apartment complex in a familial discrimination case could be contacted, also followed *Zuniga*. [Exhibit "3" lodged herewith]. **Hence, three federal judges have**

1  **previously ruled against the disclosure of providing tenants' telephone numbers in essentially 3**

2  **identical situations**.  Why is this case any different?

3  Defendants have already provided the contact information of past and current tenants, who contrary

4  to Plaintiffs' assertions, are not likely nor reasonably calculated to be witnesses.  Plaintiffs now wish that

5  the privacy rights of past and current tenants be trampled, which 3 separate federal judges, rightly so, have

6  previously ruled goes against the confines of privacy law.

7  The parties, by and through their respective counsel, hereby stipulate that the following discovery

8  requests remain in dispute.

9  III

10  **DISCOVERY REQUEST IN DISPUTE**

11  **1.       Interrogatories to Hoban Management, Inc.   (Interrogatories 1, 2, 3, and 4)**

12  **INTERROGATORY NO. 1:**

13  The name and last known address of each tenant who lived at the **COMPLEX** (**COMPLEX** shall

14  refer to the complex that is the subject of this lawsuit, the Tiara Greens Apartments, located at 747 Avocado

15  Avenue, El Cajon, San Diego County, CA  92020) at anytime between January 1, 2012 and July 25, 2014)

16  at anytime between January 1, 2012 and July 25, 2014.

17  **RESPONSE TO INTERROGATORY NO. 1:**

18  Objection.  This responding party objects to this interrogatory on the grounds that it is irrelevant

19  and not reasonably calculated to lead to the discovery of admissible evidence, it violates rights to privacy

20  and confidentiality; it is burdensome, oppressive, and harassing and it is overly broad.

21  **PLAINTIFF'S CONTENTIONS AS TO INTERROGATORY NO. 1:**

22  Defendant's refusal to turn over telephone numbers of witnesses discloses a  recent, disturbing

23  trend.  For reasons unexplained, several recent district courts have held that telephone numbers of tenants

24  do not have to be turned over during discovery.  These district court rulings run contrary to established law.

25  The testimony of tenants may be highly relevant to deciding whether defendants engage in the

26  pattern and practice of discrimination alleged in the complaint.  In *Zuniga v. Western Apartments,* 2014

27  U.S. Dist. LEXIS 83135 (Cent. Dist. CA),  the court ordered full disclosure of names and contact

28

information of all tenants, past and present.  However, the *Zuniga* court inexplicably ruled that telephone numbers of tenants were not also required to be turned over.  No explanation was given for this ruling, other than to cite a previous district court case, *Sanders v. Edge Holdings*, 2012 U.S.Dist. LEXIS 27090 (S.D. CAl. 2012).  *Sanders v. Edge Holdings,* likewise, never gave any concrete reason as to why telephone numbers did not have to be turned over.  This trend flies in the face of fair housing laws, which require that *all* tenant contact information be disclosed.

As it stands, Fed.R.Civ.Proc 26(a)(1)(A)(i) expressly requires the disclosure of "the name and, if known, the address ***and telephone number*** of each individual likely to have discoverable information" [Emphasis supplied].  Testimony from current and former tenants is useful in establishing whether the rental premises was operated on a discriminatory basis. *Woods-Drake v. Lundy,* 667 F.2d 1198, 1202 (5th Cir. 1982); *Pinchback v. Armistead Homes Corp.,* 689 F. Supp. 541, 545, 547 (D. Md. 1988), *aff'd in pertinent part,* 907 F.2d 1447 (4th Cir.), *cert. denied,* 498 U.S. 983 (1990).  In fair housing cases like this one, courts permit discovery of information about other tenants. *Marable v. H. Walker & Associates*, 644 F.2d 390, 396 (5th Cir. 1981) (evidence consisted of tenant applications and credit reports), *Smith v. Sol Adler realty Co.*, 436 F.2d 344, 347 (7th Cir. 1971) (plaintiffs allowed to inspect tenant applications).

So, there really is no dispute that tenant contact information has to be turned over.  The only issue is when can telephone numbers be withheld?

The seminal state case on point is the case of *Planned Parenthood Golden Gate v. Superior Court,* 83 Cal.App.4th 347, 359 (2000).  Although not controlling on this court, *Planned Parenthood* is, nonetheless, very helpful to the court.  The rule of law in *Planned Parenthood* established when telephone numbers could or could not be obtained.  In *Planned Parenthood*, the court took careful efforts to note that phone numbers could be withheld, but only in situations where the release of information would prove to be "dangerous." *Id.* at 363-363.

Nonetheless, Defendant will contort *Planned Parenthood* to stand for the proposition that all non-party witnesses should be free from the reach of a phone call.  This is a gross misreading of *Planned Parenthood*.  The facts in *Planned Parenthood* which justified the withholding of witness phone numbers is nowhere to be found in the current case. In *Planned Parenthood,* Plaintiffs sought the name, address, and

phone numbers of staff workers at the Planned Parenthood clinic.  The court ruled that, to release such information, would put staff members in danger of "violent" actions and could subject them to "dire" circumstances.  *Id.* at 362.   In denying the release of telephone numbers, the court held that the privacy interests of Planned Parenthood staff members were "particularly strong" and that the disclosure of such information to the public would put such individuals in "profound" danger, including the very realistic "infliction of threats, force, and violence."  *Id.* at 360.

By stark contrast, Defendant is unable to produce a single piece of evidence that suggests that the danger that was so readily apparent in *Planned Parenthood* is also present in the current case.  It does not exist.  This is no small matter.  The only explanation that Defendant indirectly hints to is that tenants will be inconvenienced  by being called.  With all due respect, "inconvenience" is not the standard for determining whether witnesses can be called on the phone. *Planned Parenthoood* clearly delineated when a court would be authorized in refusing to order the disclosure of telephone numbers: there must be a true threat involved with the release of private information.  Absent this threat, there is no justification to withhold such information.

To make matters worse, Defendant also misconstrues the ruling in *Dept. of Defense v. FLRA*, 510 U.S. 487 (1994), to stand for the proposition that the release of telephone numbers is not an "insubstantial" privacy right.  In *Dept. of Defense* there was a very real privacy interest that put the individuals, therein, at risk of harassment.  In *Dept. of Defense*, a union was seeking to obtain names and contact information of non-union employees, *Id.* at 500-501.   The court acknowledged the very real privacy interest that non-union employees had in keeping their non-union status out of the hands of the union.   Once again, the rule of law in *Dept. of Defense* was that private information could only be withheld if there was a true risk to witnesses if such information was disclosed.  No such risk exists in the current case.

Since Defendant will be unable to offer proof of danger to third parties, we will be left to speculate. Retaliation by the landlord for cooperating with an investigation is utterly illegal under State and Federal Fair Housing laws, so that cannot be proffered as an excuse.  So, what will Defendant proffer as the compelling reason why tenants at an apartment complex with a ten year history of discriminating against

tenants should not be contacted by phone?  Defendant will offer *absolutely no explanation* as to why tenant telephone numbers should be withheld.

Moreover, although Defendant eagerly cites *Sanders, Zuniga,* and *Villalvazo* for the proposition that an "obvious" trend is developing in this area, Defendant understandably fails to point out that *none* of these three cases offered an explanation as to why telephone numbers of tenants should be withheld absent a true risk of danger to tenants.   This court is invited to provide the scrutiny that was so utterly lacking in *Sanders, Zuniga,* and *Villalvazo.*

In 1988, Congress amended the Fair Housing Act to prohibit discrimination against families with children.[1]  Congress took this step based on a series of studies demonstrating that discrimination against American families was a widespread and growing phenomenon.[2]  From these studies powerful evidence emerged indicating that restrictive practices were forcing American families to live in less desirable dwellings.[3]

The regulations issued by the Department of Housing and Urban Development implementing the 1988 amendments to the Fair Housing Act make clear that Congress intended to give families with children the same protections that had been provided since the Act's adoption in 1968 to individuals on the basis of race, sex, national origin, and religion:

> [T]he legislative history of the Fair Housing Act and the development of fair
> housing law . . . support the position that . . . families with children must be
> provided the same protections as other classes of persons. . . . For example,
> "dual housing" facilities segregated by race, color or religion clearly would
> violate the . . . Act.  Similarly, . . . it is unlawful for a housing facility to

---

[1] The Fair Housing Act of 1988, as amended, went into effect on March 12, 1989.

[2] H. Rep. No. 711, 100th Cong., 2d Sess., 19-21 (1988) (hereinafter "House Report"); R. Schwemm, *Housing Discrimination* §11.6(1) (1991).

[3] House Report at 21; R. Schwemm at 11-66.  134 Cong. Rec. H4688 (June 23, 1988) (remarks of Rep. Dellums).

1  segregate because of familial status.  24 C.F.R. Ch. 1, Subch. A., App. I at

2  691 (1991); *see also id.* at 714.

3      With such important issues at stake, it seems incomprehensible that Congress would not have

4  wanted civil rights attorneys to have access to witnesses, including by telephone.  The Fair Housing Act

5  was passed for the significant reason of stopping discrimination.  It is hard to comprehend a more

6  obstructive way to prevent investigation into such discriminatory practices than to offer the blanket

7  protection that *Sanders* and its progenies suggest.

8      Indeed, in *Sanders v. Corr. Corp. of Am.*, 2011 U.S. Dist. LEXIS 14369 (E.D. Calif.  2011), the

9  court ordered the release of telephone numbers of former employees since the release of such information

10  was not a "serious invasion of privacy."  *Id.* [NOTE: This is a different case than the disputed *Sanders v.*

11  *Edge Holdings* case].

12      Herein, Defendant has offered no proof that the release of phone numbers of witnesses would prove

13  to be "dangerous" or a "serious" invasion of privacy.  There is no explanation why this particular lot of

14  witnesses should be shielded from releasing phone numbers, when witnesses in every other area of law are

15  required to release their phone numbers.  The simple fact is that there is no reason to prevent the disclosure

16  of witness telephone numbers.

17      In *People v. Dixon*, 148 Cal.App.4th 414 (2007), the court found that the disclosure of the names

18  and addresses of potential witnesses is a routine and essential part of pretrial discovery. The *Dixon* court

19  held;

20      "Under the Civil Discovery Act, "... any party may obtain discovery regarding any matter, not
privileged, that is relevant to the subject matter involved in the pending action or to the

21  determination of any motion made in that action  . . . The party's ability to subpoena witnesses
presumes that he has the witnesses' contact information. As noted by defendant, although the

22  witnesses may resist a subpoena, there is no justification for depriving defendant's attorney of the
opportunity to seek an interview in the first place. Certainly, one party's ability to cross-examine

23  the witness at trial does not absolve the other party of his pretrial discovery obligations."

24      On another front, there was no justification, whatsoever, for the courts in *Sanders v. Edge Holdings*

25  and *Zuniga* to also rule that tenants first had to be given a letter and asked if they wanted to opt-in to

26  participate as witnesses in the case, before Plaintiffs' counsel could call them on the telephone. To hold

27  such was bad law.  As noted above, Fed.R.Civ.Proc 26(a)(1)(A)(i) requires the disclosure of telephone

28

numbers of *all* witnesses, not just those who want to be contacted.   Moreover, Fed.R.Civ.Proc 26(a)(1)(A)(i) does not suggest that witnesses must first be sent a letter and asked if they wish to participate in the litigation, before being called.    Indeed, the court in *Crab Addison, Inc. v. Superior Court*, 169 Cal.App.4th 958 (2008), aptly noted that requiring a similar "opt-in" procedure for witnesses was an unfair advantage to defendants.   The *Crab Addison* court held:

> "Considering this latter interest, we opined that "the opt-in system imposed by the trial court significantly advantage[d] Wild Oats by greatly increasing the likelihood that it [would] be able to 'retain for its own exclusive use and benefit the contact information' [citation] of potential witnesses to petitioners' claims." (Puerto v. Superior Court, supra, 158 Cal.App.4th at p. 1256, 70 Cal.Rptr.3d 701, fn. omitted.) While Wild Oats would have easier access to the witnesses, some of whom undoubtedly would have been willing to participate with petitioners in the litigation, petitioners would be unnecessarily hamstrung in the conduct of discovery "by making their statutory entitlement to percipient witness discovery entirely dependent on the unreviewable decision of third parties whether they are interested in participating. **Generally, witnesses are not permitted to decline to participate in civil discovery, even when the information sought from them is personal or private.**" (Id. at pp. 1256–1257, 70 Cal.Rptr.3d 701, fn. omitted.) Use of the "opt-in" notice not only would allow witnesses not to participate, but it imposed on them no obligation to respond or assert their privacy rights, with their failure to respond being interpreted as a denial of consent. (Id. at p. 1257, 70 Cal.Rptr.3d 701.) " *Id.* at 967.[4]

---

[4]     In examining discrimination issues under the Fair Housing Act, courts frequently draw from employment discrimination analyses. *See Gamble v. City of Escondido,* 104 F.3d 300, 304 (9th Cir.1997) ("We apply Title VII discrimination analysis in examining Fair Housing Act ('FHA') discrimination claims. 'Most courts applying the FHA, as amended by the [Fair Housing Act Amendments], have analogized it to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* , which prohibits discrimination in employment.'" (quoting *Larkin v. Mich. Dep't of Soc. Servs.,* 89 F.3d 285, 289 (6th Cir.1996)); *See also Pfaff v. U.S. Dep't of Hous. & Urban Dev.,* 88 F.3d 739, 745 n. 1 (9th Cir.1996) ("We may look for guidance to employment discrimination cases.").

In short, it was unreasonable to withhold tenant phone numbers, and to require an opt-in letter to witnesses before speaking to them.  These obstacles only further ensured that fewer witnesses would participate in this fair housing case.

As for the requested information, case and statutory law supports the disclosure of such information - - as well it should - - as Congress has declared that stamping out discrimination is of paramount importance.  Refusing to allow Plaintiffs' counsel to have human contact with potential witnesses is a step in the wrong direction toward stopping discrimination.  This should really come as no surprise.  In *Ragge v. MCA/Universal Studios*, 165 F.R.D., 601, 604 (Cent. Dist. CA 1995), the court  held that third party privacy rights may be "invaded" for litigation purposes.  The court held,

> "Even if the requested documents in defendants' personnel files are protected by defendants' privacy right, that right may, nevertheless, be invaded for litigation purposes."

Likewise, the court in *Cook vs. Yellow Freight System, Inc., 132 F.R.D. 548, 551 (E.D. Cal. 1990)*, commented on the appropriateness of balancing the right to privacy with litigation goals:

> "While this court is of the view that such a balancing is appropriate, this court is also mindful of the fact that, by its very nature, litigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth."

The reality of litigation is that *all* witnesses will lose some privacy rights if the system is to work and discrimination is to be eliminated.  As for tenants at the complex, what better way to determine if an apartment complex was operated in a discriminatory manner than to speak to the people who actually live or have lived in the complex?   Moreover, what is so invasive about making a phone call to a person?  A simple phone call could last less than a minute.  If a person has no information, then they will have lost 60 seconds of their time.  Why is that so invasive?  And where is the proof that this 60 second phone call will be detrimental to the person that receives it?  Moreover, in this day-and-age where people take their phone numbers with them when they move, it will be easier to locate witnesses by telephone if they have moved.

1   Simply put, *Zuniga, Sanders,* and *Villalvazo* had no legal authority to rule as each ruled.  These

2   rulings are not binding on this court and must (understandably) be disregarded.  Consequently, a well-

3   placed protective order by the court that telephone numbers are for "attorney's eyes only" would assuage

4   any concerns that witnesses will be harassed.

5   **DEFENDANTS' CONTENTIONS AS TO INTERROGATORIES NOS. 1, 2, 3 AND 4**

6   Defendants have responded to interrogatories Nos. 1-4, with the exception that telephone numbers

7   have not been provided.

8   This decision was based, in part, on the rulings in *Zuniga* and *Sanders*.  Rather than cite to authority

9   that supports their Motion, Plaintiffs argue that the rulings in *Zuniga* and *Sanders* "are contrary to

10  established law."  In support of this position, Plaintiffs cite to Fed.R.Civ.Proc 26(a)(1)(A)(i), because it

11  requires the providing of a telephone number.  What Plaintiffs fail to address, however, is that

12  Fed.R.Civ.Proc 26(a)(1)(A)(i) is an initial disclosure requirement for each party to identify witnesses who

13  "likely" (not "possibly," "maybe," or "potentially") have discoverable information.  In no way does

14  Fed.R.Civ.Proc 26(a)(1)(A)(i) mandate that tenants' identities, addresses, or phone numbers must be

15  provided merely because one tenant within an apartment complex has filed a lawsuit alleging familial

16  discrimination.[5]

17  Plaintiffs go on and state, "The seminal state case on point is the case of *Planned Parenthood

18  Golden Gate v. Superior Court*, 83 Cal.App.4th 347".[6]  Plaintiffs further state *Planned Parenthood* is "very

19  helpful to the court".  Plaintiffs are correct.  ***Planned Parenthood* is very helpful, but *to* Defendants, *not*

20  Plaintiffs**.

21  Plaintiffs contend *Planned Parenthood* "took careful efforts to note that phone numbers could be

22  withheld, but only in situations where the release of information would prove to be 'dangerous'".  This is

---

24  [5] Throughout Plaintiffs' Contentions, Plaintiffs refer to non-party tenants as "witnesses" or infer that non-party tenants are witnesses.  If this were such, Plaintiffs, who allegedly were harassed by being told children could not play outside, would easily be able to identify the same, if not by name, then by description (e.g., "The old lady that lives above the Smiths," "The family that lives next to the Smiths," etc.).

26  [6] Plaintiffs claim, "Defendant will contort *Planned Parenthood* to stand for the proposition that all non-party witnesses should be free from the reach of a phone call."  This is untrue.  Defendants do not claim this. Defendants only cite, reference, and discuss *Planned Parenthood* because Plaintiffs claim it is the "seminal state case on point" and is "very helpful to the court."

**JOINT MOTION RE: DISCOVERY**

a complete misunderstanding of *Planned Parenthood*. *Planned Parenthood* concerned whether Planned Parenthood, a party in the action, had to disclose the residential addresses and phone numbers of its employees and volunteers. Discovery referees and the lower court ruled that the residential addresses and phone numbers had to be turned over. The Court of Appeal emphatically disagreed and vacated the lower court's order. In analyzing the issue, the Court of Appeal stated, "[T]he discovery order also impinges on nonparties' residential privacy interests by compelling disclosure of residential addresses and telephone numbers. Courts have frequently recognized that individuals have a substantial interest in the privacy of their home. [internal citations omitted]." *Id*. at 359. The Court of Appeal further recognized, "The United States Supreme Court has also acknowledged that an individual's privacy interest in his home address and telephone number is not insubstantial. (Department of Defense v. FLRA (1994) 510 U.S. 487)."[7] After a lengthy analysis and applying a balancing test, the Court of Appeal held that disclosure of residential addresses and phone numbers was not justified by the need for the discovery. *Id*. at 369.

　　　*Planned Parenthood* noted that in reviewing a party's resistence to discovery, based upon a claim that it entrenches upon a constitutional right, any compelled disclosure is treated as a state action subject to constitutional restrains. *Id*. at 357. *Planned Parenthood* further explained,

> "Whenever the compelled disclosure treads upon the constitutional right of privacy, there must be a compelling state interest. To justify a substantial infringement of First Amendment rights, disclosure must serve a compelling state purpose, and that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. **Even when an intrusion of the right of privacy is deemed necessary under the circumstances of a particular case, any such intrusion should be the minimum intrusion necessary to achieve its objective. In other words, the least intrusive means should be utilized to satisfy the state's countervailing interest and mere convenience of means or cost will not satisfy that test for that would make expediency and not the compelling interest the overriding value** [internal citations and quotations omitted]." *Id*.

　　Based upon the reasoning and explanation of law provided by *Planned Parenthood*, the rulings of *Fabiola Villalvazo, Zuniga,* and *Sanders* are put into context. Those rulings understood that non-party tenants most definitely have privacy rights, ***and that the least intrusive means must be utilized in***

---

[7] Plaintiffs state, "To make matters worse, Defendant also misconstrues the ruling in *Dept. of Defense v. FLRA*, 510 U.S. 487 (1994), to stand for the proposition that the release of telephone numbers is not an 'insubstantial' privacy right." This is untrue. Defendants are simply directly quoting what the Court of Appeal stated and cited to in *Planned Parenthood*.

*appreciation of those rights*, which is why three federal judges ruled that nonparty tenants were to be contacted only by mail, and that their telephone numbers were not to be produced.

Throughout Plaintiffs' Contentions, Plaintiffs assert the Defendants must offer proof or provide a reason for not disclosing phone numbers.[8]  Plaintiffs are misunderstanding Defendants' position and the law.  It is not on Defendants to "prove" the disclosure of phone numbers is "dangerous" or "serious".  Rather, the onus is on Plaintiffs to explain why and how the disclosure of non-party telephone numbers is the least restrictive means for the ends which Plaintiffs seek to achieve.

Contrary to Plaintiffs' position, there is no requirement that the disclosure of a non-party's telephone number be "dangerous" or "serious".  "The right of privacy is the right to be left alone." *Experian Information Solutions, Inc. v. The Superior Court,* 138 Cal.App.4th 122 (2006), citing *White v. Davis*, 13 Cal.3d 757, 773-774 (1975).  In *Experian*, a debtor filed an action against a credit reporting company under the Consumer Credit Reporting Agencies Act.  *Id*. at 125.  The debtor then sought to send a letter to former potential class members identified in discovery that they may have claims subject to running statutes of limitation and also seeking whether they had evidence relevant to the issue of the debtor's damages.  *Id*. Because the identities of the proposed recipients were already disclosed, the mailing of the letter was not deemed to further impinge on the recipients' identifying information and privacy interests.  *Id*. at 134. However, the Court of Appeal recognized that it had to balance the privacy rights of the recipients against the state interest in compelling disclosure with respect to the procedure of how a recipient would consent to be contacted.  *Id*.  It is to be noted that the Court of Appeal balanced the privacy rights of the non-party recipients even though there were no circumstances of "danger" or "seriousness" with respect to them being contacted.  Rather, the recipients being contacted (which is an intrusion upon privacy) is in and of itself a serious matter because it is a legal right.

Plaintiffs rely heavily upon *People v. Dixon*, 148 Cal.App.4th 414 (2007).  However, *Dixon* is distinguishable and inapplicable to this case.  *Dixon* did mention that the disclosure of names and addresses of potential witnesses is routine in civil proceedings (at 443), but *Dixon* did not mention anything about

---

[8] Plaintiffs state, "Defendant will offer *absolutely no explanation* as to why tenant telephone numbers should be withheld," and "Defendant has offered no proof that the release of phone numbers of witnesses [again, non-party tenants are not "witnesses"] would prove to be 'dangerous' or a 'serious' invasion of privacy."

1   phone numbers.  More importantly, the issue in *Dixon* was whether a defendant in a civil commitment

2   proceeding pursuant to the Sexual Violent Predators Act (which is governed by the Civil Discovery Act)

3   should be allowed to obtain the current contact for two prosecution witnesses who were also victims in the

4   underlying crimes.  Defendants fail to see how *Dixon* can possibly be contrived to support Plaintiffs'

5   position.

6       Lastly, Plaintiffs contend that a protective order by the court "that telephone numbers are for

7   'attorney's eyes only' would assuage any concerns that witnesses will be harassed".  Plaintiffs are missing

8   the point.  Although harassment could be a concern, it is the infringement of the privacy right that is the

9   issue.  An "attorneys-eyes only" protective order was also proposed in *Planned Parenthood* by a discovery

10  referee.  The Court of Appeal struck such a proposal down, responding, "First, since privacy interests

11  outweigh countervailing state interests, there is simply no justification for any invasion of the nonparties'

12  privacy rights.  Second, as noted above, even when an intrusion on the right of privacy is necessary, that

13  intrusion must be the minimum intrusion necessary to satisfy the state's countervailing interest [internal

14  quotes omitted]."  *Id*. at 369.  Just like this case, there is no justification for the invasion of the privacy

15  rights, and moreover, if there is such an intrusion, it must be the least intrusion necessary.

16  **INTERROGATORY NO. 2:**

17      The last known name and address of each tenant who moved out of the **COMPLEX** at anytime in

18  the last 15 months.

19  **RESPONSE TO INTERROGATORY NO. 2:**

20      Objection.  This responding party objects to this interrogatory on the grounds that it is irrelevant

21  and not reasonably calculated to lead to the discovery of admissible evidence, it violates rights to privacy

22  and confidentiality; it is burdensome, oppressive, and harassing and it is overly broad.

23  **PLAINTIFF'S CONTENTIONS AS TO INTERROGATORY NO. 2**:

24      Defendant has agreed to turn over the names and addresses of these individuals, but, once again,

25  has refused to turn over telephone numbers.  As noted in interrogatory no. 1, above, the telephone numbers

26  need to be turned over.

27  / / /

28

**DEFENDANT'S CONTENTIONS AS TO INTERROGATORY NO. 2**:

Already addressed and discussed.  Please see above.

**INTERROGATORY NO.  3:**

Please identify the name, telephone number, and apartment number of any tenant at the **COMPLEX** who has minor children living with them.

**RESPONSE TO INTERROGATORY NO. 3:**

Objection.  This responding party objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it violates rights to privacy and confidentiality; it is burdensome, oppressive, and harassing and it is overly broad.

**PLAINTIFF'S CONTENTIONS AS TO INTERROGATORY NO. 3**:

Defendant has agreed to turn over the names and addresses of these individuals, but has refused to turn over telephone numbers.   As noted in interrogatory no. 1, above, the telephone numbers need to be turned over.

As it stands, this interrogatory seeks the name and apartment number of all tenants who have minor children living with them.

**DEFENDANT'S CONTENTIONS AS TO INTERROGATORY NO. 3**:

Already addressed and discussed.  Please see above.

**INTERROGATORY NO.  4:**

Please identify the name , last known address, and telephone number of any tenant at the **COMPLEX** who moved out within the last 15 months who had minor children living with them at the **COMPLEX.**

**RESPONSE TO INTERROGATORY NO.  4:**

Objection.  This responding party objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it violates rights to privacy and confidentiality; it is burdensome, oppressive, and harassing and it is overly broad.

/ / /

/ / /

**PLAINTIFF'S CONTENTIONS AS TO INTERROGATORY NO. 4**:

Defendant has agreed to turn over the names and addresses of these individuals, but has refused to turn over telephone numbers.   As noted in interrogatory no. 1, above, the telephone numbers need to be turned over.

**DEFENDANT'S CONTENTIONS AS TO INTERROGATORY NO.  4**:

Already addressed and discussed.  Please see above.

**2.      REQUESTS FOR PRODUCTION TO HOBAN MANAGEMENT, INC.**

**REQUEST FOR PRODUCTION NO. 6:**

All three-day notices to quit delivered to any resident of the **PROPERTY** within the last two years.

**RESPONSE TO REQUEST NO.  6**

Objection.  This responding party objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; it violates rights to privacy and confidentiality.

**PLAINTIFF'S CONTENTIONS AS TO REQUEST NO. 6**:

Plaintiffs seek to determine if families with children are treated more harshly than tenants without children.  In order to establish different treatment, plaintiffs need comparative data.  As countless courts have recognized, "[c]omparative information . . . is absolutely essential to a determination of discrimination."  *E.E.O.C. v. Ford Motor Credit Corp.,* 26 F.3d 44, 47 (6th Cir. 1994); *United States v. Landsowne Swimming Club*, 894 F.2d 83, 89 n. 10 (3d. Circ. 1990)(holding that in order to determine whether a pattern or practice exists, the court must consider the defendant's operations as a whole); *United States v. Dillon Supply Co,* 429 F.2d 800, 804 (4th Cir. 1970)(same); *see also Vasquez v. County of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2003)(Comparisons of similarly-situated employees may help establish pretext in an employment discrimination case).

The Court of Appeals for the Ninth Circuit has held "that bigoted remarks by a member of senior management may tend to show discrimination, even if directed at someone other than the plaintiff," and "even if several years old." *Metoyer v. Chassman*, 504 F.3d 919, 937 (9th Cir. 2007) (citations omitted). "It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both

relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995) (citation omitted). "Recognizing that '[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes,' the Supreme Court [has] held that evidence of the employer's discriminatory attitude in general is relevant and admissible to prove . . . discrimination." *Id*. at 1480 (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

In examining discrimination issues under the Fair Housing Act, courts frequently draw from employment discrimination analysis. *See Gamble v. City of Escondido,* 104 F.3d 300, 304 (9th Cir.1997) ("We apply Title VII discrimination analysis in examining Fair Housing Act ('FHA') discrimination claims. 'Most courts applying the FHA, as amended by the [Fair Housing Act Amendments], have analogized it to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* , which prohibits discrimination in employment.' " (quoting *Larkin v. Mich. Dep't of Soc. Servs.,* 89 F.3d 285, 289 (6th Cir.1996))); *Pfaff v. U.S. Dep't of Hous. & Urban Dev.,* 88 F.3d 739, 745 n. 1 (9th Cir.1996) ("We may look for guidance to employment discrimination cases.").

As for Defendant's privacy objections, federal law - not state law - governs discovery in federal question cases in federal court.  Fed. R. Evid. 501; *Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1519 n.6 (9th Cir. 1987) (rejecting the argument that disclosure of personnel files in Title VII action was prohibited by state law);  *Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.10 (9th Cir. 1992)* (holding that  federal privilege law applies in a case involving both federal and pendent state claims); (*Kerr v. United States District Court for the Northern District of California,* 503 F.2d 1032, 1034 (9th Cir. 1974). "Moreover, the courts have frequently found that a party's need for the information may outweigh whatever privacy rights, if any, another party may have."  *Malcom Oakes, Trustee v. Halvorsen Marine Ltd.,* 179 F.R.D. 281, 284; 1998 U.S. Dist. LEXIS 13296 (C.D. Cal. 1998), citing, *Cook v. Yellow Freight System, Inc.,* 132 F.R.D. 548, 552 (E.D. Cal. 1990) (citing with approval *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 316 (1982).   As for *Zuniga,* it was correct in ruling that privacy concerns of third parties could easily be protected with a protective order ("Here, to the extent the Court has ordered defendants to produce discovery over a privacy/third party privacy objection, it has determined that the privacy right

1  asserted is outweighed by plaintiffs' need for the information and that such information can be adequately

2  protected by a protective order . . ." *Id.*).

3      As it stands, in civil rights cases, courts "routinely" order production of third party information.

4  *Ceramic Corp. of America v. Inka Maritime Corp.*, 163 F.R.D. 584, 589 (C.D. Cal. 1995) (citing cases

5  requiring production of non-party medical information, tenure, personnel files, and evaluations of non-party

6  supervisor). In fair housing cases like this one, courts permit discovery of information about other tenants.

7  *Marable v. H. Walker & Associates*, 644 F.2d 390, 396 (5th Cir. 1981) (evidence consisted of tenant

8  applications and credit reports), *Smith v. Sol Adler Realty Co.*, 436 F.2d 344, 347 (7th Cir. 1971) (plaintiffs

9  allowed to inspect tenant applications).

10     Defendants will argue that Plaintiffs have never alleged that they were threatened with eviction.

11  This assertion is contrary to the pleadings, wherein Plaintiffs have specifically alleged that Plaintiffs were

12  threatened with eviction if they failed to follow the disputed house rules [FAC ¶26 and 37(d)].

13     In short, treatment of other tenants at the complex will help determine whether families with

14  children were treated more harshly than tenants without children. This comparative data is essential to the

15  case.

16  **DEFENDANTS' CONTENTIONS AS TO REQUEST FOR PRODUCTION NO. 6**

17     Plaintiffs argue three-day notices to quit should be produced to "help determine whether families

18  with children were treated more harshly than tenants without children." In and of itself, there is logic to

19  this reasoning. However, it is not being contended by Plaintiff BARBARA LAWRENCE (nor the other

20  Plaintiffs, who were not tenants) that she (or the other Plaintiffs) were threatened with eviction, or that they

21  were served with three-day notices to quit.[9] [Plaintiffs' FAC, Exhibit "1" lodged herewith]. Nor is it

---

23  [9] Within Plaintiffs' Contentions, Plaintiffs claim they were threatened with eviction, and cite to ¶¶ Nos. 26
24  and 37(D) of the First Amended Complaint. ¶No.26 of the FAC references Exhibit "1" of the FAC, which is a
    written notice Defendants provided to all tenants. The notice states within ¶No. 4, "There should be no name calling
    or spitting or hateful words toward anyone. Anyone guilty of this type of behavior will be immediately asked to seek
25  tenancy elsewhere. This will not be tolerated. If you cannot be respectful to each other, then you should not be living
    here." The notice also states in ¶8, "Again, residents who do not follow our rules will be asked to move and this will
26  not be a negotiable request." None of this pertains particularly to  families. ¶No.37[D] of the FAC references
    "harassing, evicting, or otherwise discriminating against any person in the rental of housing accommodations... in
27  violation of California Government Code §12955(f)," but no allegations claim or refer to Plaintiffs being threatened
    with  eviction.

28

1   alleged that any tenant was threatened with eviction or served with a three-day notice to quit because of

2   having a child.  What is being alleged is that the onsite manager, Kathy Virissimo, told children they could

3   not play outside.  How does the obtainment of three-day notices to quit possibly provide "comparative data"

4   with respect to the allegations in this lawsuit?  Three-day notices to quit have nothing to do with this

5   lawsuit.  Three-day notices to quit are irrelevant and not reasonably calculated to lead to the discovery of

6   admissible evidence.

7        It is to be noted that Plaintiffs' prior Request for Production, No. 5, requested, "All three-day notices

8   to quit delivered to any resident of the PROPERTY within the last two years which notice(s) makes

9   reference to children." [Exhibit "4" lodged herewith, relevant portion of Document Production Request

10  propounded by Plaintiffs to Hoban Management, Inc.].  Defendant HOBAN MANAGEMENT, INC.

11  initially objected to this request, but after meeting and conferring with Plaintiffs, provided a supplemental

12  response, as follows: "After a diligent search and reasonable inquiry, this responding party does not have

13  and never has had any documents responsive to this request."  [Exhibit "5" lodged herewith, relevant

14  portion of Supplemental Response by Hoban Management, Inc. to Document Production Request

15  propounded by Plaintiffs].  Hence, Defendant HOBAN MANAGEMENT, INC. has already affirmed that

16  there are no three-day notices to quit which reference children.  If all three-day notices to quit have nothing

17  to do with children, how could any three-day notice to quit possibly have "comparative information" for

18  purposes of this lawsuit?

19       It appears Plaintiffs are not reasonably calculating, but rather are fishing for tenants who might

20  possibly be antagonistic towards management and/or the landlord.  It is a somewhat safe presumption to

21  assume/conclude that tenants who have been served with a three-day notice to quit, which are served

22  because a tenant is behind or not paying rent, may have hostile feelings towards management and/or the

23  landlord.  Hence, it is likely this is why Plaintiffs have cast their nets in this direction.

24       Plaintiffs cite to *E.E.O.C. v. Ford Motor Credit Corp.*, 26 F.3d 44, 47 (6th Cir. 1994), claiming the

25  United States Court of Appeals held, "comparison information... is absolutely essential to a determination

26  of discrimination".  *E.E.O.C.* did not hold this.  Rather, this was the Equal Employment Opportunity

27  Commission's (who was the plaintiff in the action) contention with respect to an administrative subpoena

28

1   it was seeking to enforce during an investigation of a sexual discrimination charge.  *Id*. at 47.  The

2   administrative subpoena, issued on April 8, 1992, sought various information for past and current

3   employees over a 12 year period.  The lower court limited the temporal scope as well as the substantive

4   scope of the administrative subpoena.  The United States Court of Appeals affirmed the lower court's ruling

5   with respect to the temporal scope, but agreed the substantive scope had been too narrowly tailored by the

6   district court.  This case has little to no similarity to the facts of this case and has nothing to do with fair

7   housing, family discrimination, tenants, privacy rights, or three-day notices.

8        Plaintiffs also cite to *United States v. Landsowne Swimming Club*, 894 F.2d 83 (3d. Cir. 1990) and

9   *United States v. Dillon Supply Co*, 429 F.2d 800, 804 (4th Cir. 1970).  Neither of these cases are persuasive

10  or "in the ballpark" of being on point.  *Landsowne Swimming Club* dealt with whether a private swimming

11  club discriminated against applicants who sought to be members based upon race.  *Dillon* dealt with

12  whether a company in North Carolina that manufactured industrial equipment engaged in employment

13  discrimination based upon race.  In *Dillon*, the United States Court of Appeals held that a lower court was

14  in error by limiting Title VII to current, specific acts of racial discrimination because Title VII provides a

15  remedy for the present and continuing effects of past racial discrimination.  *Id*. at 803-804.  This case, and

16  all cases Plaintiffs cite to, have nothing to do with fair housing, family discrimination, tenants, privacy

17  rights, or three-day notices.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

---

**JOINT MOTION RE: DISCOVERY**

Case No. 3:14cv01753-DMS-DHB                    20

1    Moreover, production of three day notices to quit that were served on tenants implicates the privacy

2    rights of those tenants for no justifiable reason.  As thoroughly discussed above (Defendants' Contentions

3    with respect to Interrogatories Nos. 1-4), infringement of privacy rights requires a balancing test, which

4    necessitates an inquiry as to the need and reason for the information being sought.  In this case, no need for

5    the information exists.

6    Dated: March 10, 2015          **LAW OFFICES OF CRAIG P. FAGAN**

7

8                                   By:    s/Craig P. Fagan
                                          Craig P. Fagan, Esq.
9                                         Attorneys for all Plaintiffs

10

11   Dated: March 10, 2015          **HORTON, OBERRECHT, KIRKPATRICK & MARTHA**

12

13                                  By:    s/Nathaniel J. Michels
                                          Nathaniel J. Michels, Esq.
14                                        Attorneys for all Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT MOTION RE: DISCOVERY**